IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COALITION OF CONCERNED CITIZENS
TO MAKEARTSMART, an Unincorporated
Association, *et al.*,

    Plaintiffs,

vs.

FEDERAL TRANSIT ADMINISTRATION OF
U.S. DEPARTMENT OF TRANSPORTATION,
an Agency of the United States, *et al.,*

    Defendants.

and

MARIA BAUTISTA, *et al.,*

    Plaintiffs,

vs.

FEDERAL TRANSIT ADMINISTRATION OF
U.S. DEPARTMENT OF TRANSPORTATION,
an Agency of the United States, *et al.*,

    Defendants.

Civ. No. 16-252 KG/KBM
Consolidated With
Civ. No. 16-354 KG/KBM

MEMORANDUM OPINION AND ORDER

    This matter comes before the Court upon Federal Defendants' Motion and Memorandum to Strike Declarations and Verification Submitted by *Coalition* Plaintiffs (Motion to Strike), filed on June 22, 2016. (Doc. 71). *Coalition* Plaintiffs filed a response on July 6, 2016, and Federal Defendants filed a reply on July 11, 2016. (Docs. 90 and 97). City Defendants join in the Motion to Strike and filed a reply on July 11, 2016, as well. (Docs. 76 and 100). Having

reviewed the Motion to Strike and accompanying briefs, the Court grants the Motion to Strike as described herein.

*A. Background*

The City of Albuquerque (City) applied for a Small Starts grant from the Federal Transit Administration (FTA) to construct the Albuquerque Rapid Transit (ART) project along Central Avenue. The FTA approved the City's application for a categorical exclusion (CE), which excluded the City from the environmental assessment or environmental impact statement requirements of the National Environmental Policy Act (NEPA). In deciding the CE application, Section 106 of the National Historic Preservation Act (NHPA) required the FTA to take into account the effect of ART on historic properties. 36 C.F.R. § 800.1(a). *Coalition* Plaintiffs' complaint contains, *inter alia*, both an Administrative Procedure Act (APA) and NHPA claim against Federal Defendants. (Doc. 1).

On June 9, 2016, *Coalition* Plaintiffs filed a Motion for Preliminary Injunction to stop ART construction. In support of their Motion for Preliminary Injunction (Doc. 45), *Coalition* Plaintiffs submitted declarations by Dr. Gregory Rowangould, Paul Lusk, Douglas H. Peterson, Stephen H. Schroeder, Steve Paternoster, Jean Bernstein, Robert Strell, Gregory Sandoval, Cynthia J. Kolson, Kurt Krumperman, and Anthony Anella. (Docs. 50-2 to 50-12). *Coalition* Plaintiffs also submitted a Verification in which Anella, as sole member of Plaintiff 2706 Central Avenue, LLC, verified that the factual allegations in the complaint "are true and correct to the best" of his "knowledge and belief." (Doc. 50-1).

Federal Defendants move to strike the declarations by Paternoster, Strell, Krumperman, Sandoval, and Kolson, because they are not Plaintiffs.[1] Federal Defendants further object to the use of any of the declarations and the Verification to the extent *Coalition* Plaintiffs intend to use the documents to support the merits of the APA or NHPA claims. Finally, Federal Defendants now move to strike Rowangould and Lusk's expert declarations, because they improperly attack the technical reports the City submitted with its CE application.

B.  Discussion

As an initial matter, *Coalition* Plaintiffs contend that the Preliminary Administrative Record alone provides sufficient evidence from which the Court can conclude that *Coalition* Plaintiffs will likely prevail on the merits of their APA and NHPA claims. *Coalition* Plaintiffs, therefore, argue that even without the declarations, the Court should grant their Motion for Preliminary Injunction. (Doc. 90) at 5-6. Nevertheless, *Coalition* Plaintiffs maintain that the Court may consider their declarations.

Normally, a judicial review of an agency action is confined to the administrative record. *Citizens For Alternatives To Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007). In the Tenth Circuit, the Court may only consider extra-record evidence in "extremely limited circumstances, such as where the agency ignored relevant factors it should have considered or considered factors left out of the formal record." *Id.* (quoting *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004)). With respect to "dealing with scientific and technical evidence, extra-record evidence 'may illuminate whether an [environmental impact statement] has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism ...

---

[1] Federal Defendants suggest that, although not named Plaintiffs, Lusk, Schroeder, and Bernstein are members of Plaintiff Coalition of Concerned Citizens to MakeARTSmart. (Doc. 71) at 7 n.3.

under the rug.'" *Id.* (quoting *Lee,* 354 F.3d at 1242 (internal quotations omitted)). The Court may also consider extra-record evidence "when there is a 'strong showing of bad faith or improper behavior.'"[2] *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971)).

Regarding expert declarations, "[i]t is well established that 'agencies are entitled to rely on their own experts so long as their decisions are not arbitrary and capricious.'" *Lee*, 354 F.3d at 1242 (quoting *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1036 (10th Cir. 2001)). The Court must also give deference to an agency's interpretation of its own regulations, "especially when that interpretation involves questions of scientific methodology." *Utah Envtl. Cong. v. Bosworth*, 439 F.3d 1184, 1188-89 (10th Cir. 2006) (quoting *Colorado Envtl. Coal. v. Dombeck*, 185 F.3d 1162, 1170 (10th Cir. 1999)). Moreover, "[t]he agency, not the reviewing court, is entrusted with the responsibility of considering the various modes of scientific evaluation and theory and choosing the one appropriate for the given circumstances." *Id.* (quoting *City of Bridgeton v. FAA,* 212 F.3d 448, 459 (8th Cir. 2000)). Consequently, the fact that a party's expert disagrees with an agency's expert as to the "reliability of the methodology and whether it has been applied accurately" is an insufficient basis for admitting extra-record evidence. *Lee,* 354 F.3d at 1243-44.

---

[2] *Coalition* Plaintiffs cite *Hells Canyon Pres. Council v. Jacoby*, a 1998 Oregon district court case, for the proposition that the Court consider the following grounds when deciding whether to admit extra-record documents: "1) to determine whether the agency considered all relevant factors; 2) to determine whether the agency's 'course of inquiry was sufficient or inadequate;' 3) when it is necessary to explain the agency's action; 4) when the agency has relied on evidence outside the record; 5) to explain technical terms or complex subject matter; or 6) when there is a showing of agency bad faith…." 9 F. Supp. 2d 1216, 1223 (D. Or. 1998) (citations omitted). The Court declines to rely on *Hells Canyon Pres. Council*, because the Tenth Circuit provides relevant case law on that subject. *See Citizens For Alternative to Radioactive Dumping*, 485 F.3d at 1096.

*1. Declarations by Bernstein, Anella, Peterson, Lusk, and Schroeder to Establish Standing and Irreparable Harm*

Federal Defendants concede that *Coalition* Plaintiffs can rely on the extra-record declarations by Bernstein, Anella, Peterson, Lusk (to the extent his declaration does not provide opinion evidence), and Schroeder to establish standing.³ (Doc. 71) at 6-7. *See US Magnesium LLC v. U.S. E.P.A.*, 690 F.3d 1157, 1164-65 (10th Cir. 2012) (court may consider declarations "for sole purpose of determining whether [plaintiff] has standing…."). Federal Defendants further concede that *Coalition* Plaintiffs can rely on the extra-record declarations by Bernstein, Anella, Peterson, and Schroeder to establish the irreparable harm necessary to justify a preliminary injunction. (Doc. 71) at 8. *See Souza v. California Dep't of Transp.*, 2014 WL 1760346, at *7 n. 1 (N.D. Cal.) (court may consider declaration "for the limited purpose of assessing irreparable harm.").

*2. Use of Declarations to Establish Likelihood of Success of APA and NHPA Claims*

*Coalition* Plaintiffs argue that all of their declarations are permissible extra-record evidence to establish the likelihood of success of the APA and NHPA claims. *Coalition* Plaintiffs base that argument on the following reasons.⁴ First, the declarations demonstrate that the FTA ignored relevant factors such as traffic disruptions, harm to businesses, public comment, pedestrian safety, and harm to historic resources. Second, the expert declarations explain the technical issues associated with the City's traffic assessment report and will aid the Court in determining whether the FTA adequately considered the environmental consequences of

---

³ Standing, however, is not an issue in this case.

⁴ *Coalition* Plaintiffs rely on the grounds set forth in *Hell's Canyon Preservation Council* to argue that the extra-record declarations should be allowed. As noted above, the Court will follow Tenth Circuit law on the matter. Hence, the Court will address the *Coalition* Plaintiff's reasons for permitting the extra-record declarations within the context of that law.

implementing ART.

### a. Using All Declarations to Demonstrate Failure to Consider Relevant Factors

*Coalition* Plaintiffs argue that, although Kolson and Sandoval are neither Plaintiffs nor members of Plaintiff Coalition of Concerned Citizens to MakeARTSmart, the Court should not strike their declarations, because they relate to relevant factors the FTA should have considered. Kolson reviewed FTA and City documents to identify and quantify negative comments regarding the ART project while Sandoval made first-hand observations of bus ridership along Central Avenue. The two declarations provide evidence to support *Coalition* Plaintiffs' assertions that the City's CE application falsely indicated positive public support for ART and high bus ridership. *Coalition* Plaintiffs argue that these two declarations tend to show that the FTA failed to consider all relevant factors, including negative public comments and low bus ridership.

Federal Defendants, however, correctly observe that the Court cannot supplement the administrative record with post-decisional material like that offered by Sandoval and to some extent by Kolson (*see* post-decisional attachments to Kolson's declaration: (Doc. 81-1) at 3-15).[5] *See, e.g., Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) ("post-decision information … may not be advanced as a new rationalization either for sustaining or attacking an agency's decision.").

*Coalition* Plaintiffs, nonetheless, contend that the Court should not strike any of their declarations, because the FTA has a continuing duty to examine new information, including the information contained in the declarations. *See Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 559 (9th Cir. 2000) ("It is the agency, not an environmental plaintiff, that has a 'continuing duty to gather and evaluate new information relevant to the environmental impact of its

---

[5] Federal Defendants also note that the Court should not consider documents found in (Doc. 50-3) at 34-49, because they are post-decisional. (Doc. 97) at 10 n.3.

actions….') (citation omitted); *Black Warrior Riverkeeper, Inc. v. Alabama Dep't of Transp.*, 2016 WL 233672, at *36 (M.D. Ala.) ("At each stage of the design process, the relevant agencies have a continuing duty to consider whether new information or changes in the environment or project design necessitate additional studies and NEPA documents."). Although this continuing duty may be true for an agency, the Court's role in this lawsuit is to review the FTA's decision to grant the CE application based upon the materials before the FTA at the time of its decision and upon acceptable extra-record materials, if any.

Federal Defendants further argue that because *Coalition* Plaintiffs' declarations concern subject matter already addressed in the Preliminary Administrative Record, i.e., impacts on traffic, access to businesses, pedestrian safety, bus ridership, and storm water issues as well as consideration of public comment, the declarations cannot supplement the Preliminary Administrative Record. *See, e.g., Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 665 (9th Cir. 1998) ("not an abuse of discretion for the district court to strike cumulative and unnecessary documents outside the administrative record" which are not "outcome determinative"). In fact, the City's reports in the Preliminary Administrative Record address many of the factors *Coalition* Plaintiffs assert the FTA did not consider, albeit in a manner which *Coalition* Plaintiffs disagree with. The Court, however, notes that the Preliminary Administrative Record does not appear to contain a study or analysis of the economic impact of ART on businesses. If that is the case, as Federal Defendants note, the appropriate remedy is to remand the case to the FTA for consideration of that factor and not to consider the extra-record declarations on that issue. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("if the agency has not considered all relevant factors, … the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). In any event, the evidence in the

declarations concerning a negative impact on businesses is unsubstantiated and, therefore, not helpful to the Court.

*Coalition* Plaintiffs contend, on the other hand, that the declarations by Schroeder, Peterson, Paternoster, Bernstein, Strell, Krumperman, and Anella provide, through common sense, evidence that the FTA failed to consider ART's impact on businesses and adjoining neighborhoods. *Coalition* Plaintiffs cite *Nat'l Post Office Collaborative v. Donahoe* wherein the district court concluded that, even under a deferential standard of review, an agency's application of a CE must "square[] with common sense." 2013 WL 5818889, at *12 (D. Conn.). That court's comment, however, was not in the context of deciding whether to strike extra-record evidence, but rather was made in the context of reviewing the administrative record. Moreover, when it comes to a multi-faceted and complex project like the ART project, the Court finds the proposed "common sense" standard also unhelpful and, instead, ambiguous and subjective at best.

### b. The Expert Declarations

Federal Defendants argue that the Court should strike the Rowangould and Lusk expert declarations, because they improperly second guess the experts relied upon by the City and the FTA. The Court notes that in this case the FTA was not required to rely on its own experts, but instead could rely on the City's experts whose reports are included in the Preliminary Administrative Record. *See* 23 C.F.R. § 771.118(d) (applicant for documented CE "shall submit documentation which demonstrates that the specific conditions or criteria for these CEs are satisfied and that significant environmental effects will not result."). Rowangould and Lusk, in

their declarations, attack the reliability of the City's methodology.[6] In other words, Rowangould and Lusk disagree with the City's experts. Such a disagreement between experts on the correct methodology to utilize does not provide a sufficient reason to allow Rowangould and Lusk's extra-record declarations. *See Lee*, 354 F.3d at 1243-44.

    *3. The Bad Faith Exception*

*Coalition* Plaintiffs also contend that their declarations show that the FTA acted in bad faith when it willfully failed to give the CE application a "hard look." *See Utah Shared Access All. v. U.S. Forest Serv.*, 288 F.3d 1205, 1207-08 (10th Cir. 2002) (NEPA "requires only that the agency take a 'hard look' at the environmental consequences before taking a major action."). Other than the nine-day period between the time the City submitted its CE application and the FTA approved the application, *Coalition* Plaintiffs do not provide any direct evidence that the FTA "willfully" failed to give the CE application a "hard look." Even if the FTA did not give the CE application a "hard look," *Coalition* Plaintiffs have not provided any legal authority suggesting that failure to give a CE application a "hard look" necessarily amounts to bad faith. It may be possible that such a failure amounted to only negligence. *Coalition* Plaintiffs merely disagree with the FTA and allege in a speculative manner that the FTA acted in bad faith. *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 798 (E.D. Va. 2008) ("disagreement with an agency's ultimate decision, or with its interpretation of the factual materials before it, is not bad faith."). *Coalition* Plaintiffs, thus, have not made a "strong showing" of bad faith. Consequently, the bad faith exception does not apply to the extra-record declarations.

---

[6] A portion of Rowangould's report critiques the Travel Demand Study, a study the City included in its Small Starts grant application, but did not include in its CE application. *See* (Doc. 50-2) at 21. That part of Rowangould's report is, therefore, not relevant to what the FTA had before it when it reviewed the CE application.

*C. Conclusion*

In sum, the Court concludes that the Federal Defendants' Motion to Strike has merit and will be granted to the extent that the Court will not consider *Coalition* Plaintiffs' declarations or Verification in deciding whether *Coalition* Plaintiffs will likely succeed on the merits of their APA and NHPA claims.[7]  This ruling does not include those documents Federal Defendants concede should not be stricken or the extent of the use of certain declarations which Federal Defendants concede are acceptable.

IT IS ORDERED that

1.  Federal Defendants' Motion and Memorandum to Strike Declarations Submitted by *Coalition* Plaintiffs (Doc. 71) is granted; and

2.  except for those documents Federal Defendants concede are properly before the Court and except to the extent Federal Defendants concede some declarations are acceptable, the Court will not consider *Coalition* Plaintiffs' declarations filed in support of their Motion for Preliminary Injunction or the Verification in determining whether *Coalition* Plaintiffs have demonstrated a likelihood of success on the merits of their APA and NHPA claims.

_____
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that Federal Defendants do not object to the Court considering the following attachments to the declarations:  (Doc. 50-12) at 9-22; (Doc. 50-14); and (Doc. 80-1) at 16.  (Doc. 97) at 3.